OPINION
{¶ 1} Appellant, Teddy J. Bialkowski ("appellant"), filed this appeal seeking review of an order by the Franklin County Court of Common Pleas granting a Civil Stalking Protection Order ("CSPO") in favor of appellee, Belinda Roncone ("appellee"). For the reasons that follow, we reverse.
 {¶ 2} Appellant and appellee were students in the engineering program at The Ohio State University ("OSU"). The two were in a class together during spring quarter of *Page 2 
2005. Appellant knew appellee because he had been in a class during an earlier quarter with appellee's identical twin sister, Bridget. The two were in a project group together, and would occasionally eat lunch together, where they would compare answers to questions from class.
 {¶ 3} Appellee testified that she began feeling uncomfortable around appellant after an incident in which he told her a group meeting had been scheduled, but when she arrived for the meeting, no other members of the group were there, and appellant told her he had forgotten to invite them. Appellee testified that some time in October or November of 2005, appellant approached her as she was walking on campus, put his hand or arm around her neck, and asked her "what would you do if I choked you like this." (Tr. Vol. I at 12.) Appellee did not make any report to police regarding this incident, and appellant denied that any such incident ever took place.
 {¶ 4} Some time over Christmas break of 2005, appellant began contacting appellee's sister via instant messaging, asking her to help convince appellee to switch classes so appellant and appellee would be in class together. At some point, appellee told appellant she would not be working with him on group projects any longer. On January 5, 2006, appellant and appellee exchanged e-mails. In this exchange, appellant told appellee he was feeling depressed and unable to control his emotions regarding her, and appellee told appellant he should not attempt to contact her or her sister.
 {¶ 5} Appellant continued to send appellee e-mails even after she had told him not to contact her again. At one point, appellant created a new instant messaging account name after appellee placed a block on receipt of messages from his existing account. Appellee filed a report with OSU police officers regarding appellant's actions. *Page 3 
Officer Linton of the OSU police left appellant a voicemail message telling him he should stop contacting appellee. Appellant attended a meeting with Officers Linton and Snyder at which he produced binders in which he had organized copies of all of the communications between him and appellee and her sister.
 {¶ 6} Even after this meeting, appellant continued to attempt to contact appellee. Appellant sent appellee a letter that concluded by pointing out that in her communication telling him not to contact her, appellee had not told him that he could not contact her through the post office. Appellant also approached appellee in class and attempted to give her copies of some CD's, which she refused to accept. Appellee and her sister testified to a number of other subsequent instances in which appellant approached one of them even after being told by OSU police not to. As a result of these actions, OSU instituted disciplinary proceedings against appellant.
 {¶ 7} On February 24, 2006, appellee filed a petition seeking an ex parte CSPO, which was granted. The order listed both appellee and her sister as protected parties. The case was scheduled for hearing before a magistrate on March 1, 2006. On that date, appellant appeared with counsel, and appellee appeared pro se. The hearing was continued until March 28, 2006 to allow appellee to obtain counsel. Both parties appeared with counsel on March 28, and some discussions were held in an attempt to resolve the matter. The hearing was then continued until May 10, 2006, at which time the hearing commenced. At the close of the first day, the magistrate continued the hearing until May 22, 2006, and the court heard additional testimony on that date. At the conclusion of that day's evidence, the magistrate continued the hearing until June 9, 2006. *Page 4 
 {¶ 8} On June 9, appellant's counsel filed a motion seeking to withdraw as counsel, citing philosophical differences between himself and appellant. The motion also included a request to continue the third day of the hearing to allow appellant to hire new counsel. The trial court granted the motion to withdraw as counsel, but denied the motion for a continuance, concluding that appellant had elected to represent himself in the hearing.
 {¶ 9} Appellant represented himself during the third day of the hearing, presenting himself as his only witness. Appellee's counsel was present for the third day, but appellee herself was not. Appellee had not been subpoenaed to testify.
 {¶ 10} On June 12, 2006, the magistrate issued a decision granting the CSPO covering appellee and her sister. The trial court overruled appellant's objections to the magistrate's decision, and adopted the decision as modified to correct some minor factual errors in the decision.
 {¶ 11} Appellant filed this appeal, alleging the following assignments of error:
 I. THE TRIAL COURT IMPROPERLY DENIED APPELLANT A FULL AND FAIR HEARING AS REQUIRED BY OHIO REVISED CODE SECTION 2903.214(D)(1).
 II. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S LONE REQUEST FOR A CONTINUANCE FOR GOOD CAUSE.
 III. THE TRIAL COURT FAILED TO DISMISS APPELLEE'S CLAIM AS A MATTER OF LAW FOR FAILURE TO PROSECUTE.
 IV. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING APPELLEE'S PETITION FOR A STALKING CIVIL PROTECTION ORDER BECAUSE IT WAS BASED ON INSUFFICIENT EVIDENCE UNDER OHIO REVISED CODE SECTION 2903.211. *Page 5 
 V. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING APPELLEE'S PETITION FOR A CIVIL STALKING PROTECTION ORDER BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 VI. THE TRIAL COURT ERRED AS A MATTER OF LAW BY ACCEPTING APPELLEE'S PETITION FOR A STALKING CIVIL PROTECTION ORDER WHEN THE PETITION WAS LEGALLY INSUFFICIENT AS IT FAILED TO STATE A CLAIM FOR RELIEF UNDER R.C. § 2903.214(C).
 {¶ 12} Because our decision on appellant's second assignment of error is dispositive of this appeal, we begin our discussion with that assignment. In that assignment, appellant argues that the trial court abused its discretion by denying his motion to continue the third day of the hearing in order to allow him to obtain new counsel.
 {¶ 13} Generally, the decision whether to grant or deny a continuance lies within the sound discretion of the trial court. State v. Unger
(1981), 67 Ohio St.2d 65, 67, 423 N.E.2d 1078. Thus, a trial court's decision regarding a continuance will only be reversed if the trial court abused its discretion. Fiocca v. Fiocca, Franklin App. No. 04AP-962, 2005-Ohio-2199. Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 218, 450 N.E.2d 1140.
 {¶ 14} We have previously recognized that it may be error for a trial court to deny a continuance that has been requested as a result of an attorney's withdrawal from representation in the middle of a trial, particularly where the effect of the denial of a continuance is that a party is forced to proceed without counsel. Foley v. Foley, Franklin App. No. 05AP-242, 2006-Ohio-946. In Foley, we applied the balancing factors set forth *Page 6 
in Unger, supra. Those factors include: (1) the length of the requested delay; (2) whether other continuances have been requested and granted; (3) the inconvenience to the other parties, witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons, and is not dilatory, purposeful, or contrived; (5) whether the party requesting the continuance contributed to the circumstances giving rise to the request; and (6) any other relevant factors. Unger at 67. Nothing in the record indicates that the magistrate engaged in any consideration of the factors set forth in Unger.
 {¶ 15} Appellant did not specify the amount of time he was requesting for a continuance, nor did the magistrate question appellant on this point. When questioned by the magistrate, appellant stated that he was in the process of considering possible new counsel. Appellant indicated that he hoped new counsel would be in place by the following week, but did not indicate when new counsel would be prepared to go forward with the hearing.
 {¶ 16} The record shows that appellant had not previously requested any continuances. Appellee requested and received a continuance of the initial March 1, 2006 hearing date so she could hire counsel. A second continuance was ordered after the parties sought but failed to negotiate a resolution of the case at the next hearing date.
 {¶ 17} As for the inconvenience to the other party, the witnesses, opposing counsel, and the court, nothing in the record reflects any particular amount of inconvenience that would have resulted from granting a continuance. At the point in the hearing when the continuance was requested, appellee had rested, and appellant was set to begin putting on his defense. Appellant stated that the only witnesses he intended to put on were appellee and himself, so there would have been no inconvenience to any *Page 7 
witnesses. The magistrate concluded that granting a continuance would have been "highly prejudicial" (Tr. Vol. III at 6) to appellee, however, appellee was not present in court for the third day of the hearing, so there is nothing in the record that would indicate any inconvenience to her nor does the record indicate any inconvenience that would have been imposed on opposing counsel or the court.
 {¶ 18} There is also nothing in the record that would support the conclusion that the continuance was requested for a dilatory purpose. The magistrate placed a great deal of emphasis on the fact that appellant could have brought in new counsel prior to the third day of the hearing. Appellant's counsel attempted to explain the timing of events, but the magistrate refused to consider this information. (Tr. Vol. III at 9.) Appellant did contribute to the circumstances giving rise to the request for continuance, in that his disagreement regarding how the case should be conducted led to his attorney's withdrawal.
 {¶ 19} The final Unger factor requires us to consider any other relevant factors that are unique to this case. First, as we emphasized in Foley, supra, trial courts must look closely at motions to withdraw when made in conjunction with motions for continuance, especially where, as here, the magistrate granted counsel's motion to withdraw outside the time permitted for withdrawal by Loc.R. 18.
 {¶ 20} An additional fact unique to this case that would have weighed in favor of granting a continuance was the fact that appellant's counsel had not brought all of the documents that had been accumulated for the defense of the case with him to the hearing, apparently because he had anticipated that both the motion for withdrawal and the motion for continuance would be granted. Although appellee's counsel had many of *Page 8 
the documents, thus allowing appellant to submit at least some of the documents into evidence, a continuance would have allowed withdrawing counsel to ensure that all documents were provided to appellant.
 {¶ 21} A final unique fact weighing in favor of a continuance was that appellee failed to appear for the third day of hearing. Appellee was cross-examined during her case-in-chief, but appellant stated that it had been his intention to recall her as a witness for his case-in-chief. A continuance would have allowed appellant to ensure appellee's attendance at the hearing through the issuance of a subpoena.
 {¶ 22} Given the circumstances of this case, we find that theUnger factors weighed strongly in favor of granting appellant's motion for a continuance. Consequently, we find that the trial court abused its discretion in denying the continuance and appellant's second assignment of error is sustained. Having reached that conclusion, we find appellant's remaining assignments of error moot.
 {¶ 23} Having sustained appellant's second assignment of error, and overruled the remaining assignments of error as moot, the judgment of the trial court is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.
Judgment reversed; cause remanded.
 KLATT and FRENCH, JJ., concur. *Page 1